Fredrick and Mylinda KING, parents and guardians ad litem for Jordan KING, a minor child; Betty Stafford, parent and guardian ad litem for Jerry N. Stafford III, a minor child; Bonnie and Steve Stierna, parents and guardians ad litem for Josie Stierna, a minor child; Mark Lindsey and Lien VU, parents and guardians ad litem for Lorenzo Quoc Anh Lindsey, and Dianne Doggett and Gary Fagelman, parents and guardians ad litem for August Fagelman, Plaintiffs,

v.

AVENTIS PASTEUR, INC., individually and as successor in interest to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; Pfizer, Inc., a subsidiary of Warner–Lambert, Parke–Davis, Inc.; GlaxoSmithKline, individually and as a successor in interest to SmithKline Beecham Corp.; Merck & Company, Inc.; Abbott Laboratories; American Home Products dba Wyeth, Wyeth Laboratories, Wyeth–Ayerst, Wyeth–Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle

Laboratories; Baxter International, Inc., individually and as successor in interest to Norht American Vaccine, Inc.; Eli Lilly & Company, Inc.; Gallipot, Inc.; Medisca, Inc.; Meridian Chemical and Equipment, Inc.; John Doe Corporate Defendants 1–20; Beverly Wittkopp, M.D.; Lori Gilmartin, M.D.; and Walter Buhl, M.D., Defendants.

No. CV 01–1305 BR.

United States District Court, D. Oregon.

June 7, 2002.

Michael L. Williams, Kathleen M. Dailey, Thomas B. Powers, Williams Dailey O'Leary Craine & Love P.C., Portland, OR, for Plaintiff.

George S. Pitcher, Paul R. Duden, Tooze Duden Creamer Frank & Hutchinson, Portland, OR, Jeanne E. Walker, Marsha M. Piccone, Faegre & Benson LLP, Denver, CO, for Defendant Aventis Pasteur, Inc., individually and as successor in interest to Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught.

William B. Crow, Richard L. Fortner, Miller Nash LLP, Portland, OR, for Defendant GlaxoSmithKline, individually as successor in interest to SmithKline Beecham Corp.

Peter R. Chamberlain, Molly Jo Mullen, Bodyfelt Mount Stroup & Chamberlain, Portland, Ralph A. Campillo, Wendy Tucker, Sedgwick Detert Moran & Arnold, Los Angeles, CA, for Defendant Merck & Company, Inc.

James H. Gidley, Perkins Coie, LLP, Portland, OR, Richard L. Josephson, Baker Botts LLP, Houston, TX, for Defendant Abbott Laboratories.

Margaret Hoffman, Joshua P. Stump, Schwabe Williamson & Wyatt, P.C., Portland, OR, Frank Lane Heard, III, Stephen L. Urbanczyk, Williams & Connolly, Washington, DC, for Defendant American Home

Products dba Wyeth, Wyeth Laboratories, Wyeth–Ayerst, Wyeth–Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories.

Jonathan M. Hoffman, Mary Anne S. Rayburn, Martin Bischoff Templeton Langslet & Hoffman LLP, Portland, OR, J. Carter Thompson, Jr., Lee Davis Thames, Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Jackson, MS, for Defendant Baxter International, Inc., individually and as successor in interest to North American Vaccine, Inc.

James L. Dumas, Edward T. Tylicki, Lindsay Hart Neil & Weigler LLP, Portland, OR, Marie S. Woodbury, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Eli Lilly & Company, Inc.

Janet Marie Schroer, Hoffman Hart & Wagner LLP, Portland, OR, for Defendant Beverly Wittkopp, M.D.

Steven P. Jones, Molly K. Marcum, Keating, Jones, Bildstein & Hughes, P.C., Portland, OR, for Lori Gilmartin, M.D.

Larry A. Brisbee, Brisbee & Stockton, Hillsboro, OR, for Walter Buhl, M.D.

## AMENDED OPINION AND ORDER

*(Nunc Pro Tunc June 7, 2002)*

BROWN, District Judge.

Plaintiffs commenced these proceedings in state court as a potential class action on behalf of millions of children in the United States who allegedly have been or will be injured from exposure to mercury contained in "Thimerosal," a preservative found in various childhood vaccines. In their First Amended Complaint filed on July 31, 2001, Plaintiffs allege state law claims for negligence, common law fraud, strict products liability, and unjust enrichment. They seek money damages, equitable relief, and declaratory relief against various vaccine manufacturers, Thimerosal manufacturers, and physicians who allegedly administered the childhood vaccines.[1]

On August 31, 2001, Defendants removed Plaintiffs' action to this Court. On October 1, 2001, Plaintiffs filed a Motion to Remand (# 18). On November 28, 2001, Magistrate Judge Donald C. Ashmanskas heard oral argument on the Motion. On January 7, 2002, the Magistrate Judge issued Findings and Recommendation (# 45) in which he recommended this Court grant Plaintiffs' Motion to Remand. Defendants filed timely Objections (# 46) to the Magistrate Judge's Findings and Recommendation. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1). *See also United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir.1988); *McDonnell Douglas Corp. v. Commodore Business Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

On April 3, 2002, this Court heard additional oral argument regarding Defendants' assertion that this Court has diversity jurisdiction over Plaintiffs' claims and, therefore, should deny Plaintiffs' Motion to Remand.[2] The parties subsequently pro-

---

1. Plaintiffs have voluntarily dismissed their claims against Defendants Meridian Chemical and Equipment, Inc.; Gallipot, Inc.; Medisca, Inc.; Integra Biosciences, Inc.; Pfizer, Inc., a subsidiary of Warner–Lambert, individually and as successor in interest to Parke–Davis, Inc.; and David Ruiz, M.D.

2. The United States Department of Justice on behalf of the United States Department of Health and Human Services (HHS) filed a "Statement of Interest" (# 60) in which it set out its position regarding the scope of the National Vaccine Injury Compensation Act, 42 U.S.C. § 300aa, *et seq.* Counsel for HHS

vided the Court with supplemental briefs relating to diversity jurisdiction.

For the reasons that follow, the Court **OVERRULES** Defendants' Objections, **ADOPTS** the Magistrate Judge's Findings and Recommendation, and **GRANTS** Plaintiffs' Motion to Remand.

## STANDARDS

An action filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). The federal district courts have original subject matter jurisdiction over claims that arise under federal law. 28 U.S.C. § 1331. Federal courts also have original subject matter jurisdiction over actions in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and the parties are citizens of different states. 28 U.S.C. § 1332(a).

## DISCUSSION

### I. Introduction to the National Vaccine Injury Compensation Act

In 1986 Congress enacted the National Vaccine Injury Compensation Act (Vaccine Act), 42 U.S.C. § 300aa, *et seq.*, in response to its concerns about the expense, delay, and unpredictability of the tort system in processing and compensating persons for vaccine injuries and the instability and uncertainty of the childhood vaccine market. H.R.Rep. No. 99–908, 99th Cong., 2d Sess. 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6348. Pursuant to the Vaccine Act, the victim of a "vaccine-related injury or death" may file a petition for compensation with a specialized tribunal of special masters of the United States Court of Federal Claims (Vaccine Court). 42 U.S.C. § 300aa–11(a)(1). The Vaccine Act

prohibits a victim of a vaccine-related injury or death from filing a civil action for damages of more than $1,000 against a vaccine manufacturer or administrator unless the victim first files a petition in Vaccine Court pursuant to the Vaccine Act. 42 U.S.C. § 300aa–11(a)(2)(A). If the victim of a vaccine-related injury or death first files a civil action in either state or federal court, "the court shall dismiss the action." 42 U.S.C. § 300aa–11(a)(2)(B).

Pursuant to the Vaccine Act, a vaccine-related injury or death is

> an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to such a vaccine.

42 U.S.C. § 300aa–33(5). The terms adulterant and contaminant are not defined by the Vaccine Act.

Under the Vaccine Act, a petitioner suffering from a vaccine-related injury may recover actual unreimbursable medical and rehabilitative expenses, damages for reduced earning capacity or lost wages, up to $250,000 in damages for pain and suffering or emotional distress, and reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(a), (e). Punitive damages are prohibited. 42 U.S.C. § 300aa–15(d). In the event of a vaccine-related death, the estate of the deceased may recover $250,000 plus attorneys' fees and costs. 42 U.S.C. § 300aa–15(a), (e). Compensation awards under the Vaccine Act are paid from the Vaccine Injury Compensation Trust Fund, which is funded by excise taxes on certain vaccines. 42 U.S.C. § 300aa–15(i)(2); 26 U.S.C. § 9510(b)(1).

---

also attended oral argument. Although HHS did not seek prior approval of the Court and could not cite to any legal authority that au-

thorized it to submit a Statement of Interest, the Court has considered the Department's position.

After the Vaccine Court issues a judgment, the petitioner may choose to reject the judgment and pursue a tort action in state or federal court. 42 U.S.C. § 300aa–21(a). The Vaccine Act, however, alters the nature of any civil action that follows in several ways:

- The vaccine manufacturer may not be held liable for "unavoidable" side effects of a properly-manufactured vaccine that was accompanied by proper directions and warnings even if the vaccine was defectively designed. 42 U.S.C. § 300aa–22(b)(1).

- If the vaccine manufacturer can show it complied with the requirements of the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301, *et seq.,* there is a presumption that the vaccine was accompanied by proper warnings and directions. The plaintiff may overcome this presumption only if he can show by clear and convincing evidence that the manufacturer failed to exercise due care, engaged in fraud or intentionally withheld safety information, or participated in other criminal activities relating to. 42 U.S.C. § 300aa–22(b)(2).

- The vaccine manufacturer is not liable for failure to warn the plaintiff or the plaintiff's parents directly of the potential dangers associated with the vaccine. 42 U.S.C. § 300aa–22(c).

- A civil action against a vaccine manufacturer for damages must be trifurcated into stages: liability, compensatory damages, and punitive damages. 42 U.S.C. § 300–aa–23(a)–(d).

- If the vaccine manufacturer can show it complied with the requirements of the FDCA, it cannot be held liable for punitive damages unless the plaintiff can show the manufacturer engaged in fraud, intentionally withheld safety information, or participated in other criminal activities relating to the safe-

ty and effectiveness of vaccines. 42 U.S.C. § 300aa–23(d).

## II. The Magistrate Judge correctly concluded this Court lacks federal question jurisdiction.

█ For removal to be valid based on federal question jurisdiction, the plaintiff's "well-pleaded complaint" must state at least one claim "arising under" federal law. *Ultramar America, Ltd. v. Dwelle,* 900 F.2d 1412, 1414 (9th Cir.1990). The court determines whether the operative complaint states a claim arising under federal law by ascertaining "the legal construction of the plaintiff's allegations." *Id.* The plaintiff is the "master" of her action, and "if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal." *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996) (citations omitted).

█ "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citing *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126, (1908)). This rule applies "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Nonetheless, a plaintiff may not plead around a federal question if the plaintiff's claim "necessarily depends" on federal law; therefore, federal question jurisdiction exists when federal law is a "necessary element of one of the well-pleaded state claims" even if the plaintiff attempts to ignore the federal issue. *ARCO Envt'l Remediation, L.L.C. v. Dep't of Health and Envt'l Quality of*

*State of Mont.,* 213 F.3d 1108, 1116 (9th Cir.2000) (internal quotations and citations omitted).

Defendants alleged in their Notice of Removal that this action

> falls under this court's original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) .... There are causes of action within the federal court's jurisdiction. Substantial federal question issues are raised in plaintiffs' complaint with respect to the application of the National Vaccine Injury Compensation Act, 42 U.S.C. § 300aa, *et. seq.* Plaintiffs' claims depend on resolution of these issues.

Although Defendants did not assert expressly in the Notice of Removal that Plaintiffs' claims arise under federal law, the parties and the Magistrate Judge each considered whether Plaintiffs' claims were created by federal law and whether Plaintiffs' claims raise substantial federal questions.

## A. The Vaccine Act did not "create" Plaintiffs' claims.

Plaintiffs did not file petitions for compensation in Vaccine Court pursuant to the Vaccine Act before filing their action in state court. Plaintiffs argue they were not required to do so because their claims are based on the ill-effects of Thimerosal rather than the vaccines which contain the preservative. Thus, Plaintiffs argue they have not stated claims for vaccine-related injuries or deaths. Defendants, however, argue Thimerosal is part of the vaccine in which it is contained and, therefore, Plaintiffs' claims are based on vaccine-related injuries. Defendants further contend the Vaccine Act's remedial procedures are a

prerequisite to filing state law claims, and, therefore, Plaintiffs' rights to recover for their vaccine-related injuries arise solely under the Vaccine Act.

■ The Magistrate Judge concluded Plaintiffs' state law claims were not created by the Vaccine Act.[3] This Court concurs. In their First Amended Complaint, Plaintiffs allege claims for negligence, fraud, unjust enrichment, and strict products liability that arise under Oregon common law and seek state common law damages and equitable recourse. Plaintiffs' state law claims preexisted the enactment of the Vaccine Act and, therefore, were not created by the Vaccine Act. Moreover, even if the Vaccine Act applied to Plaintiffs' claims, it would only postpone and alter the state law claims rather than preempt them. In fact, the viability of such claims and the recovery available may vary from jurisdiction to jurisdiction. The federal statute has not displaced these variations in state law claims nor has it replaced them with a new federal claim. Accordingly, the Court concurs with the Magistrate Judge's conclusion that Plaintiffs' claims were not created by federal law.

## B. Plaintiffs' state law claims do not raise substantial federal questions sufficient to confer federal question jurisdiction.

Defendants contend this action raises substantial federal questions about the scope of the Vaccine Act's requirements and the meaning of the term "vaccine-related injury." Defendants further contend federal courts rather than state

---

**3.** The Magistrate Judge stated, "[t]here is no dispute that Plaintiffs' claims are created by state common law or that the [Vaccine] Act does not preempt Plaintiffs' claims." Although the record suggests Defendants dis-

agree with the Magistrate Judge's assertions, these discrepancies are of no import in light of this Court's concurrence that Plaintiffs' claims do not arise under the Vaccine Act.

courts should determine these important questions of federal law.

■ The Magistrate Judge adopted the district court's reasoning in *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 189 (E.D.N.Y.2000) and concluded the issue of whether the Vaccine Act applies to Plaintiffs' claims is "insufficiently substantial" to confer federal question jurisdiction. This Court finds no error in that approach. In addition, this Court finds persuasive the analysis of the District Court for the Western District of Washington in *Garcia v. Aventis Pasteur*, No. C02–0168C,[4] and the District Court for the Northern District of California in *Doherty v. Aventis Pasteur*, No. C 01–4771 MJJ.[5] Defendants have not cited and the Court has not found any contrary authority on federal question jurisdiction under the Vaccine Act.[6]

### III. This Court lacks diversity jurisdiction.

28 U.S.C. § 1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and the parties are citizens of different states. For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.2001). One exception to the requirement of complete diversity, however, is when a nondiverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987).

■ A district court, however, may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent. *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (citation omitted). Fraudulent joinder does not impugn the integrity of the plaintiff or its counsel and does not refer to an intent to deceive. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D.Cal.1979), *aff'd* 710 F.2d 549 (9th Cir. 1983).

> Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris*, 236 F.3d at 1067 (internal quotations and citations omitted).

■ A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citation omitted). *See also Ritchey*, 139 F.3d at 1318. To resolve fraudulent joinder

---

**4.** The Western District of Washington issued the *Garcia* Order on April 22, 2002. A copy of that Order is attached to Plaintiffs' Response to the Supplemental Memorandum in Support of Defendants' Objections to Findings and Recommendations of the Magistrate Judge.

**5.** The Northern District of California issued the *Doherty* Order on May 17, 2002. A copy of that Order is attached to Plaintiffs' Notice of Supplemental Authority in Support of the Findings and Recommendations of the Magistrate Judge.

**6.** In their Supplemental Notice of Authority, Defendants provided copies of three district court opinions from the Southern District of Texas issued on May 7, 2002. In each opinion, the court reaches the substantive conclusion that the Vaccine Act bars state law claims similar to Plaintiffs' claims here. The plaintiffs in each of those cases, however, apparently filed federal court actions initially. Accordingly, the district court did not consider expressly whether it had federal question jurisdiction over those controversies.

claims, the court may look beyond the pleadings and consider evidence similar to that offered in summary judgment proceedings, such as affidavits and deposition testimony. *Morris*, 236 F.3d at 1067 (citation omitted).

■ A district court resolves all questions of disputed fact and controlling law against the party seeking removal. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir.1995) (citations omitted). Removal to federal court will be sustained, however, if the removing party demonstrates there is no possibility the plaintiff can state a cause of action against the nondiverse defendant. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). *See also Ritchey*, 139 F.3d at 1318 ("[A] defendant must have the opportunity to show that the individuals joined in the action cannot be liable on any theory.").

Defendants asserted a claim of fraudulent joinder in the Notice of Removal:

At all times material herein, plaintiffs and defendants are and were citizens of different states except that the complaint names as defendants Lori Gilmartin, M.D., Beverly Wittkopp, M.D., and Walter Buhl, M.D., all or some of whom are citizens of the same state as plaintiff.

The citizenship of said defendants should be disregarded for purposes of determining diversity jurisdiction ... on the ground that there is no possibility that plaintiff will be able to establish liability against said parties; they are sham or fraudulently joined parties. There is no possibility that plaintiffs can prove their cause of action against these defendants. Disregarding these defendants, none of the defendants are citizens of Oregon, and this action may be removed to this Court by defendants in that it is a civil action between citizens of different states.[7]

Defendants contend there is no possibility that Plaintiffs can prevail against Drs. Gilmartin, Wittkopp, and Buhl (Defendant Doctors) because the Vaccine Act required Plaintiffs to bring their damages claims for vaccine-related injuries before the Vaccine Court before pursuing their state law claims.[8] Plaintiffs argue the law defining the scope of the Vaccine Act is unsettled, and Defendants, therefore, have not shown Plaintiffs failed to allege viable state law claims against the Defendant Doctors.

The Magistrate Judge concluded the state court could find Plaintiffs' claims for damages and equitable relief do not in-

---

**7.** Although Defendants failed to allege explicitly in the Notice of Removal that the matter in controversy exceeds $75,000 exclusive of interest and costs, Plaintiffs did not raise this procedural defect in the Motion to Remand. The Ninth Circuit has held a district court errs when it remands a case based on a defect in removal procedure that was not raised within 30 days after the filing of the notice of removal even if a timely remand motion was filed. *Northern Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.1995). The Court, therefore, has no authority to remand this action based on a procedural defect at this time.

**8.** The Magistrate Judge concluded Plaintiffs asserted claims for money damages against Defendant Doctors in their First Amended

Complaint because "the complaint clearly asks the court to direct Defendant Doctors to pay money into a fund for the benefit of Plaintiffs as a class." The Magistrate Judge, however, also determined Defendants failed to show there is no possibility that Plaintiffs stated a valid state law claim for declaratory relief. In Plaintiff's Response to Defendants' Objections to the Findings and Recommendations and during oral argument before this Court, Plaintiffs apparently conceded they seek money damages from the Defendant Doctors. In any event, the Court concurs with the Magistrate Judge's conclusion that Plaintiffs assert claims for damages against the Defendant Doctors and, therefore, the Court need not address whether Plaintiffs have stated viable claims for declaratory relief.

volve a vaccine-related injury as defined in the Vaccine Act and, therefore, the state court could decline to dismiss Plaintiffs' claims for noncompliance with the Vaccine Act. Accordingly, the Magistrate Judge concluded the Defendant Doctors are not sham defendants and the citizenship of these Defendant Doctors may not be disregarded.

 In their Objections, Defendants assert the Magistrate Judge erred when he "failed to decide" whether the Vaccine Act applies to Plaintiffs' claims. Plaintiffs, however, correctly note the Magistrate Judge was obligated to evaluate Plaintiff's Motion to Remand under the following standard: When a removing defendant alleges the district court has diversity jurisdiction on the basis of fraudulent joinder, "the federal court first adopts a strict presumption against removal, and then asks whether there is 'any chance' that a state court would find a viable cause of action against a resident defendant." *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1426 (9th Cir.1984). Plaintiffs also accurately distinguish this standard from the standard that a court with certain jurisdiction would apply to resolve a motion to dismiss for failure to comply with the Vaccine Act.

This Court concurs with Plaintiffs and, therefore, overrules Defendants' Objection that the Magistrate Judge erred when he failed to determine the scope of the Vaccine Act. This Court also concludes Defendants' Vaccine Act defense to Plaintiffs' claims is insufficient to establish Plaintiffs fraudulently joined Defendant Doctors to defeat diversity. The Court does so, however, on different grounds than the Magistrate Judge.

In *Ritchey,* the plaintiff, a California resident, brought an action against his California physicians and a nonresident drug manufacturer in California state court to recover for the adverse side effects the plaintiff suffered from medication prescribed or manufactured by the defendants. The defendants removed the action to federal court on the basis of diversity jurisdiction and asserted there was no possibility the plaintiff could establish his claims against the California physicians because the claims were time-barred under California law. In fact, all of the plaintiff's claims, including his claims against the nonresident defendants, were time-barred. The district court denied the plaintiff's motion to remand and dismissed the claims. The Ninth Circuit affirmed those decisions. The court stated:

> In deciding whether a cause of action is stated we have declared that we will "look only to a plaintiff's pleadings to determine removability." (citations omitted). And, we have commented that we will determine the existence of federal jurisdiction ... solely by an examination of the plaintiff's case, without recourse to the defendant's pleadings.

*Id.* (citations omitted). The Ninth Circuit further explained a defense "exogenous" to a claim (such as incomplete preemption) would not turn a state action into a federal one for purposes of federal question removal jurisdiction. The court noted precedent suggested "an exogenous defense could not turn a true defendant into a sham defendant" for purposes of diversity jurisdiction. *Id.* Although the Ninth Circuit stopped short of resolving whether an exogenous defense could ever form the basis for a fraudulent joinder defense, the court observed the statute of limitations defense was a "unique" defense under California law because it did not go to the merits of the plaintiff's claim and could be raised by demurrer for failure to state a claim pursuant to California procedural law. For these reasons, the Ninth Circuit held the district court properly addressed the merits of the defendants' statute of limitations defense when it determined

whether the resident defendants were fraudulently joined even though the statute of limitations is technically a defense rather than a part of the plaintiff's cause of action.

■ Defendants argue their defense under the Vaccine Act does not go to the merits of Plaintiffs' claims and, as such, is analogous to the statute of limitations defense that supported a finding of fraudulent joinder in *Ritchey*. The Court rejects Defendants' analogy. Defendants concede Oregon law does not require Plaintiffs to plead they have exhausted procedural requirements under the Vaccine Act in order to state their common law claims. Moreover, if the Vaccine Act applies, its provisions clearly go to the merits of Plaintiffs' various state law claims if the Vaccine Act applies. The Vaccine Act limits Plaintiffs' rights to recovery in Vaccine Court, and, more importantly, substantively alters the claims that Plaintiffs could pursue in state court and the relief they would be able to seek after exhausting the Vaccine Act's procedures. The Court agrees with Plaintiffs that "the type of lawsuit these plaintiffs could file in state court under the terms of the Vaccine Act would look very little like the lawsuits they filed last year" in state court, and their claims would be significantly limited both substantively and procedurally.

In any event, the reach of the Vaccine Act arises outside of "an examination of plaintiff's case" and looks instead to Defendants' substantive defenses to that case. The Court, finds, therefore, it may not reach the merits of Defendants' Vaccine Act defense for purposes of fraudulent joinder analysis. Accordingly, the Court concludes Defendants have failed to establish diversity jurisdiction.

### CONCLUSION

Based on the foregoing, the Court **OVERRULES** Defendants' Objections (# 46), **ADOPTS** Magistrate Judge Ashmanskas's Findings and Recommendation (# 46), and **GRANTS** Plaintiffs' Motion to Remand (# 18).

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ASHMANSKAS, United States Magistrate Judge.

The complaint presently before the court was filed as a class action on behalf of more than 30 million children in the United States who received vaccines packaged in multi-dose vials containing the preservative "Thimerosal." The named plaintiffs are children who have been injured, or "poisoned", by the doses of toxic organic mercury found in Thimerosal, and the parents of such children ("Plaintiffs"). The defendants in the action are the manufacturers and distributors of the vaccines, the manufacturers of Thimerosal (the "Defendant Corporations") and the doctors who administered vaccines containing Thimerosal ("Defendant Doctors")(collectively "Defendants").

Plaintiffs originally filed this action in the Circuit Court of the State of Oregon for the County of Multnomah asserting a number of state law claims including negligent failure to warn; negligence; fraud; strict products liability based on both failure to warn and defective design; unjust enrichment and medical negligence. Plaintiffs seek equitable relief in the form of an order determining who had the duty to warn; directing Defendant Corporations to provide Plaintiffs with information relevant to the vaccine on an ongoing basis; establishing a court-controlled fund created by payments from Defendants to conduct studies and provide ongoing treatment for Plaintiffs; and tolling all applicable statutes of limitation during the pendency of the research. Additionally, one

of the named plaintiffs asserts a claim for personal injury based on negligence and strict product liability and seeks damages in the amount of five million dollars for the child and two million dollars for the child's mother.

Defendants removed the action to this court asserting that Plaintiffs' complaint raises "substantial federal question issues * * * with regard to application of the National Vaccine Injury Compensation Act, 42 U.S.C. § 300aa, *et seq.*" and that "Plaintiffs' claims depend on resolution of these issues." Defendants also argue that Defendant Doctors are "sham defendants" and that this court has diversity jurisdiction over the action. Presently before the court is Plaintiffs' motion for remand pursuant to Fed.R.Civ.P. § 1447(c).[1]

### LEGAL STANDARD

Section 1447(c) provides, in part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Only cases that would have had original jurisdiction in a federal district court may be removed from state court. 28 U.S.C. § 1441(a). The removal statute is strictly construed and any doubt about the right of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The presumption against removal jurisdiction means "the defendants always has the burden of establishing that removal is proper." *Id.*

28 U.S.C. § 1332(a) authorizes district courts to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, the parties are citizens of different states, and citizens

of or subjects of a foreign are additional parties. "Absent diversity of citizenship, federal question jurisdiction is required." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(b).

■ It is clear that the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Federal question jurisdiction exists only if the federal question appears on the face of plaintiff's complaint; if not, original jurisdiction is lacking, even if the defense is based on federal law. *Id.*

### DISCUSSION

**Federal Question Jurisdiction**

Defendants assert that this court has federal question jurisdiction over this action because Plaintiffs' complaint requires resolution of issues under the National Vaccine Injury Compensation Act (42 U.S.C. § 300aa, *et seq.*)(the "Act"). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow*, 478 U.S. at 808, 106 S.Ct. 3229 However, federal courts have recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct.

---

1. Plaintiffs also seek to remand this matter based on Defendants' failure to "provide sufficient notice of the grounds for diversity removal". Because the court finds that it lacks

subject matter jurisdiction over Plaintiffs' claims and recommends remanding this matter, Plaintiffs' alternative argument is moot and will not be addressed by the court.

2841, 77 L.Ed.2d 420 (1983). "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.* at 13, 103 S.Ct. 2841.

There is no dispute that Plaintiffs' claims are created by state common law or that the Act does not preempt Plaintiffs' claims. Accordingly, Plaintiffs' cause of action is not created by federal law. The court must now consider whether Plaintiffs' claims raise substantial federal issues.

In their complaint, Plaintiffs ask the court to consider a number of questions implicating the Act. For example, Plaintiffs ask the court to determine whether Thimerosal is an "adulterant or contaminant intentionally added to vaccines as that phrase is defined by the [Act]," whether Plaintiffs' claim fall within the exclusive jurisdiction of the U.S. Federal Court of Claims under the Act, and whether Defendants are entitled to rely on the defenses to liability provided under the Act in state court. Defendants contend that these allegations present substantial federal questions which must be determined by a federal court.

As noted above, the fact that a defendant may rely, or has asserted, a defense created by federal law does not establish federal jurisdiction. Additionally, the United States Supreme Court has made it clear that the mere fact that a complaint has presented a federal question does not require a finding of subject matter jurisdiction. The federal question must be substantial and must be intimately or uniquely related to existing federal law.

The Act creates a special, fast-track claims procedure for individuals who have sustained a vaccine-related injury as defined by the Act. 42 U.S.C. § 300aa–11.

Those individuals must file a claim with the United States Court of Claims before pursuing any common law claims. The Act does not prevent those not who have not sustained a "vaccine-related injury," such as a family member, from bringing a civil action in either state or federal court for compensation or psychological counseling. *Schafer v. American Cyanamid Co.,* 20 F.3d 1, 5 (1st Cir.1994). Additionally, the Act itself expressly authorizes vaccine-related litigation in either state or federal court where the amount of damages is less than $1,000 or the plaintiff has elected to reject the award of, or withdraw their claim from, the United State Court of Claims. 42 U.S.C. § 300aa–11. More to the point, the Act contemplates the filing of claims covered by the Act in federal or state court prior to the filing of a claim in the United States Court of Claims and authorizes both the federal and state courts to dismiss such claims. *Id.* This necessarily authorizes the state courts to consider whether a vaccine-related claim is covered by the act and to act accordingly. Finally, the Act provides that, subject to certain defenses available to manufacturers under the Act, state law shall apply to civil actions brought for vaccine-related injuries. *Id.*

Here, Congress had the opportunity to craft an exclusive federal remedy for all vaccine-related injuries. Instead, it limited its remedy for individuals directly injured by a vaccine to a special, fast-track claim process in the United States Court of Claims. It did not in anyway alter the existing tort claims for individuals indirectly injured or otherwise affected by a vaccine or for those opting out of the special claims process offered by the Act. The court agrees with the reasoning of the District Court for the Eastern District of New York set forth in *Haggerty v. Wyeth Ayerst Pharmaceuticals,* 79 F.Supp.2d 182, 189 (2000), and finds that "such feder-

al elements as are introduced by the [Act] into state causes of action are 'insufficiently "substantial" to confer federal question jurisdiction.' " (quoting *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

**Diversity Jurisdiction—Sham Defendants**

A number of the doctors named as defendants in the action are citizens of the State of Oregon. In the absence of these Oregonians, complete diversity would exist between the parties to this action and this court would have diversity jurisdiction. Defendants argue that there is no possibility that Plaintiffs will be able to establish liability against these doctors, that they were sham or fraudulently joined and that the citizenship of these defendants should be disregarded for purposes of determining diversity jurisdiction.

For removal to be valid based on diversity jurisdiction, 28 U.S.C. § 1332(a) "requires complete diversity of citizenship." *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001). One exception to the requirement of complete diversity, however, is when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

A district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent. *Plute v. Roadway Package System, Inc.,* 141 F.Supp.2d 1005, 1008 (N.D.Cal.2001) (citation omitted). Fraudulent joinder does not impugn the integrity of plaintiffs or their counsel and does not refer to an intent to deceive. *Lewis v. Time, Inc.,* 83 F.R.D. 455, 460 (E.D.Cal. 1979) aff'd., 710 F.2d 549 (9th Cir.1983). Instead, it is a term of art that means:

Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.

*Morris,* 236 F.3d at 1067 (internal quotations and citations omitted).

A defendant seeking removal to federal court "is entitled to present the facts showing the joinder to be fraudulent." *McCabe,* 811 F.2d at 1339 (citations omitted). See also, *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.), *cert. denied,* 525 U.S. 963, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). To resolve fraudulent joinder claims, the court may look beyond the pleadings and consider evidence similar to that offered in summary judgment proceedings, such as affidavits and deposition testimony. *Morris,* 236 F.3d at 1067 (citation omitted).

A district court resolves all questions of disputed fact and controlling law against the party seeking removal. *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995) (citations omitted). Removal to federal court will be sustained, however, if the removing party demonstrates there is no possibility the plaintiff can state a cause of action against the non-diverse defendant. *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3rd Cir.1992).

Plaintiffs allege that Defendant Doctors, who administered vaccines containing Thimerosal to Plaintiffs from 1990 through 2000, were negligent in continuing to administer such vaccines even after the FDA announced in 1999 that infants who received vaccines containing Thimerosal were being exposed to dangerously high levels of toxic mercury, in failing to warn parents of the associated risks and failing to make Thimerosal-free vaccines available

to their patients. Defendants contend that the claim against the Defendant Doctors falls within the parameters of the Act and must be dismissed because Plaintiffs did not first file a claim in the United States Court of Claims in accordance with the requirements of the Act. Additionally, Defendants argue that Plaintiffs are unable to state a viable claim for declaratory relief against Defendant Doctors.

The Act provides that:

No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine * * *.

Defendant Doctors are "vaccine administrators" under the Act and Plaintiffs seek, as damages, unspecified payments from all Defendants into a fund to be managed by the court.[2] Consequently, the question before the court is whether a state court could find that Plaintiffs injuries were not "vaccine-related."

The Act defines a vaccine-related injury or death as:

"[A]n illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to such a vaccine."

42 U.S.C. § 300aa–33(5). Thimerosal is not a vaccine, it is a preservative added to multiple-use vials of a vaccine to extend the viable life of the vaccine. Thimerosal is not listed as a vaccine in the Vaccine Injury Table, which courts have tended to construe in an extremely narrow and strict manner. In *Brausewetter v. HHS*, 1999 WL 562700 (Fed.Cl.1999), the court found that the Act did not apply to plaintiff's claim because the specific type of tetanus vaccination he received (Hyper–Tet) was not listed as a vaccine in the Vaccine Injury Table. Similarly, in *Staples v. Secretary of HHS*, 30 Fed.Cl. 348 (1994), the court held that claims for injuries caused indirectly by the inactivated polio vaccine were not cover by the Act because oral polio vaccine was the only polio vaccine listed in the Vaccine Injury Table. Finally, Plaintiffs clearly allege that they were injured by the toxic mercury found in the Thimerosal, not by the inherent risk of injury by vaccinations which motivated Congress to create of the Act.

The court finds that it is entirely possible that the state court would find that Plaintiffs' injuries, which are attributed solely to the toxic mercury found in Thimerosal, do not qualify as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine Injury Table" and are not covered by the Act. Consequently, the court finds that Plaintiffs have stated a viable state claim against Defendant Doctors and are not barred from pursuing such claim in state court by failing to file a claim in the United States Court of Claims in accordance with the requirements of the Act.

Defendants also argue that Plaintiffs fail to state a viable claim for declaratory relief against Defendants Doctors under Oregon law. Defendants base this argument on the premise that Plaintiffs are not seeking money damages against Defendant Doctors. Defendant Doctors are correct that no individual plaintiff is asking the

---

**2.** There is some confusion about whether Plaintiffs' complaint seeks damages from Defendant Doctors, which would defeat Plaintiffs' claim for declaratory judgment against the doctors. However, because the court finds that Plaintiffs have stated a viable claim in state court against Defendant Doctors, this issue will not be addressed by the court.

court to award them damages for injuries suffered as a result of Defendant Doctors' negligence. However, the complaint clearly asks the court to direct Defendant Doctors to pay money into a fund for the benefit of Plaintiffs as a class. Despite the characterization of the claims against Defendant Doctors as solely claims for declaratory judgment, the court finds that Plaintiffs have stated a claim for money damages against Defendant Doctors.

Even assuming Plaintiffs' claim was limited to a request for declaratory relief, the court finds that Plaintiffs have successfully stated such a claim. The question of whether a plaintiff has stated a viable claim for declaratory relief rests on whether the complaint presents a "justiciable controversy." *Clark v. Albany,* 142 Or. App. 207, 212, 921 P.2d 406 (1996).

> Under Oregon law, a justiciable controversy exists when "the interests of the parties to the action are adverse" and "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy. * * * Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties," are moot.

*Barcik v. Kubiaczyk,* 321 Or. 174, 182, 895 P.2d 765 (1995) (quoting *Brumnett v. PSRB,* 315 Or. 402, 405–05, 848 P.2d 1194 (1993)).

Plaintiffs allege that Defendant Doctors were negligent in continuing to administer vaccines containing Thimerosal after they became aware of the dangers attributed to such vaccines and in failing to adequately warn their patients of such dangers. Plaintiffs ask the court to determine whether Defendant Doctors had a duty to warn parents about the dangers of the vaccines.

It is evident that Plaintiffs' interest in being warned of the dangers of Thimerosal and given the option of Thimerosal-free vaccines are adverse to the interests of Defendant Doctors, who failed to provide such warning or alternative vaccination. A determination by the court on whether Plaintiffs have a viable claim against Defendant Doctors for the alleged negligent failure to warn will clearly have some practical effect on the rights of both Plaintiffs and Defendant Doctors.

The court finds that Plaintiffs have stated a viable claim for declaratory relief against Defendant Doctors under Oregon law and that the citizenship of such doctors must be considered by the court for purposes of diversity. This court lacks diversity jurisdiction over this action.

## CONCLUSION

Plaintiffs' motion (18) for remand should be GRANTED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **January 22, 2002.** If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due **February 5, 2002,** and the review of the Findings and Recommendation will go under advisement on that date.