George SHADIE, Parent and Natural Guardian of Alex Shadie, et al. Plaintiffs

v.

AVENTIS PASTEUR, INC., Individually and as Successor in Interest to Connaught Laboratories, Inc., et al. Defendants

No. 3:CV–02–0702.

United States District Court, M.D. Pennsylvania.

March 31, 2003.

Gerald John Hanchulak, Scranton, PA, for Plaintiffs.

Jonathan Dryer, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Catherine Merino Reisman, James A. Willhite, Jr., John W. Frazier, IV, Mongomery McCracken Walker & Rhoads LLP, Eugene J. Kuzinski, Nina M. Gussack, Pepper Hamilton LLP, Philadelphia, PA, Thomas B. Schmidt, III, Thomas B. Schmidt, III, Pepper Hamilton LLP, Harrisburg, PA, Dino S. Sangiamo, Venable, Baetjer and Howard, LLP, Baltimore, MD, George A. Reihner, Elliot Reihner Siedzikowski North & Egan, Scranton, PA, Andrea J. Rea, Reed Smith, L.L.P., Philadelphia, PA, F. Lane Heard, III, Williams & Connolly, Washington, DC, Michael T. Scott, Reed, Smith, Shaw & McClay, Philadelphia, PA, Robert B. Hoffman, Reed Smith LLP, Harrisburg, PA, Ryan T. Scarborough, Stephan L. Urbanczyk, Williams and Connolly, Washington, DC, David R. Kraus, Dechert, Harrisburg, PA, Lee Davis Thames, Butler Snow O'Mara Stevens & Cannada, PLLC, Jackson, MS, Robert A. Limbacher, Dechert, Philadelphia, PA, Michael J. Donohue, Kreder, Brooks, Hailstone & Ludwig, Scranton, PA, Christine Coers–Mitchell, Cosgrave Vergeer Kester LLP, Portland, OR, Delano M. Lantz, McNees Wallace & Nurick, Harrisburg, PA, Walter H. Sweek, Cosgrave Vergeer Kester LLP, Portland, OR, Michael J. O'Neill, Ronald P. Schiller, Piper Runick, LLP, Philadelphia, PA, Irving Weisen, Stamford, CT, Timothy E. Foley, Foley, Cognetti, Comerford & Cimini, Scranton, PA, for Defendants.

## MEMORANDUM

VANASKIE, Chief Judge.

The plaintiffs commenced these proceedings in the Court of Common Pleas of Lackawanna County on March 22, 2002. The plaintiffs are parents and their children who allegedly have been exposed to mercury contained in Thimerosal, a preservative found in various childhood vaccines. They contend that this alleged exposure caused neurological damage and neurodevelopmental injuries to the children, specifically, "degenerative or regressive, late onset autism." (Exhibit A, Dkt. Entry 1, Complaint, ¶¶ 6–10.) The following defendants are alleged to have manufactured the vaccines that contained Thimerosal: Aventis Pasteur Inc., GlaxoSmithKline, Merck & Co., American Home Products Corp. d/b/a Wyeth Lederle, Baxter International, and Abbott Laboratories.[1] The Complaint also

---

1. Plaintiffs have voluntarily dismissed their claims against Gallipot, Inc., Medisca, Inc., and Pfizer, Inc., a subsidiary of Warner–Lambert, individually and as successor in interest to Parke–Davis, Inc. (Dkt. Entry 26.) The plaintiffs continue to assert claims against "John Doe Corporations, Defendants 1–20" and Meridian Chemical and Equipment. (Ex. A, Dkt. Entry 1, Complaint.) Their connection to Thimerosal is unclear at this stage of the litigation.

named Eli Lilly & Co. as a defendant. Eli Lilly allegedly manufactured Thimerosal and sold it to vaccine manufacturers during the relevant time period. The plaintiffs allege state law claims for strict products liability, negligence, and fraud. (*Id.*) They seek money damages and equitable relief, including the immediate recall of all vaccines containing Thimerosal, (*id.,* ¶ 65), and an order directing the defendants to warn of the dangers associated with these vaccines containing Thimerosal. (*Id.,* ¶ 66.)

On April 25, 2002, the defendants removed this matter to this Court asserting that this Court had both diversity and federal question jurisdiction over plaintiffs' claims. On April 30, 2002, the plaintiffs filed a motion to remand this case to the state court, arguing that this Court lacked subject matter jurisdiction over this matter. (Dkt. Entry 13.) On May 21, defendants Aventis Pasteur, GlaxoSmithKline, Merck & Co., American Home Products, and Abbott Laboratories filed a motion to dismiss. (Dkt. Entry 23.) They argued that under the National Vaccine Injury Compensation Act (the "Vaccine Act"), 42 U.S.C. § 300aa *et seq.,* this case properly belongs in the United States Court of Federal Claims. Defendant Eli Lilly filed a separate motion to dismiss and asserted that the plaintiffs had failed to state a claim upon which relief can be granted for the state causes of action. (Dkt. Entry 22.)

All motions have been briefed thoroughly. Defendants have submitted supplemental authority to apprise the Court of pertinent decisional and statutory developments. Having carefully considered the parties' submissions and the applicable case law, I have concluded that this case was not subject to being removed to federal court. That is, at the time of removal there was not complete diversity between the defendants and the plaintiffs, and the complaint did not involve a substantial question of federal law. Thus, plaintiffs' motion to remand will be granted and defendants' dispositive motions will be dismissed as moot.

## THE NATIONAL VACCINE INJURY COMPENSATION ACT

In 1986 Congress enacted the Vaccine Act, which creates a federal no-fault remedial scheme for vaccine-related injuries in which plaintiffs first pursue their claims through the Court of Federal Claims. *See* 42 U.S.C. § 300aa *et seq.* The policy of the statute is to expedite the award of damages and protect vaccine manufacturers from burdensome litigation. H.R.Rep. No. 99–908, at 4, *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. Under the Act, a victim of a "vaccine-related injury or death" may file a petition for compensation with a specialized tribunal of special masters of the Court of Federal Claims (the "Vaccine Court"). 42 U.S.C. § 300aa–11(a)(1). The Act prohibits such victims from filing a civil action for damages of more than $1,000 against "a vaccine manufacturer or administrator" in either state or federal court without first filing a petition for relief in the Vaccine Court. 42 U.S.C. § 300aa–11(a)(2)(A). If the victim of a vaccine-related injury or death first files a civil action in either state or federal court, "the court shall dismiss the action." 42 U.S.C. § 300aa–11(a)(2)(B).

In addition to limiting the venues available to plaintiffs, the Vaccine Act also limits the available remedies. Under the Act, a petitioner suffering from a "vaccine-related injury" may recover actual nonreimbursable medical and rehabilitative expenses, damages for reduced earning capacity or lost wages, up to $250,000 in damages for pain and suffering or emotional distress, and reasonable attorneys' fees and costs. Petitioners may not recover punitive damages. 42 U.S.C.

§ 300aa–15(a),(d),(e). After the Vaccine Court issues a judgment, the petitioner may choose to reject the judgment and pursue a tort action in state or federal court. The Act continues to restrict these suits in various ways. For example, vaccine manufacturers may not be held liable for "unavoidable" side effects of a properly-manufactured vaccine that was accompanied by proper directions and warnings even if the vaccine was defectively designed. 42 U.S.C. § 300aa–22(b)(1). Civil actions must also be trifurcated into following stages: liability, compensatory damages, and punitive damages. 42 U.S.C. § 300aa–23(a)–(d).

It is undisputed that the plaintiffs in the matter *sub judice* did not file a petition with the Vaccine Court. Therefore, if this Court has removal jurisdiction over this case, and if the plaintiffs' injuries are properly considered to be "vaccine-related" injuries under the Vaccine Act (an issue disputed by the parties),[2] the Court would be required to dismiss the case without prejudice to allow the plaintiffs to pursue their claims in the Vaccine Court.

## DISCUSSION

### A. Plaintiffs' Procedural Challenge to the Removal

■ The defendants bear the burden of establishing removal jurisdiction and demonstrating compliance with all pertinent procedural requirements. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc.*, 809 F.2d 1006, 1011 (3d Cir.1987). Removal statutes are to be strictly construed and all doubts resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Boyer*, 913 F.2d at 111; *Landman v. Borough of Bristol*, 896 F.Supp. 406, 408 (E.D.Pa.1995).

One of the procedural requirements of removal is that the defendants must remove the case within thirty days of service of the complaint. 28 U.S.C. § 1446(b). Although the plaintiffs concede that the petition for removal was timely filed within thirty days of the filing of the complaint, they argue that all defendants were required to join in the removal petition within that time. (Pl. Brief in Support of Mot. to Remand, Dkt. Entry 14, at 2, citing *Morganti v. Armstrong Blum Mfg. Co.*, No. Civ. A. 00–6343, 2001 WL 283135, at *2–3 (E.D.Pa. Mar. 19, 2001).) The defendants agree that they must clearly and unambiguously join in or otherwise consent to a co-defendant's removal, but con-

---

**2.** The Act defines a vaccine-related injury as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa–33(5). Although the Act does not define the terms "adulterant" and "contaminant," practically every court that has considered this issue had held that Thimerosal is not an adulterant or contaminant, including the Court of Federal Claims, which is charged with hearing such cases. *See Leroy v. Sec'y of the Dep't of Health & Human Servs.*, No. 02–392V, 2002 WL 31730680 (Fed.Cl. Oct. 11, 2002); *see also Owens ex rel. Schafer v. American Home Products Corp.*, 203 F.Supp.2d 748 (S.D.Tex. 2002). Defendants urge that this Court rule in this case that Thimerosal is not an "adulterant" or "contaminant," a result that would warrant dismissal of this action because plaintiffs failed to exhaust the Vaccine Court process. Before this issue may be addressed, however, the following question of subject matter jurisdiction must be answered: was this case subject to being removed from state court in the first instance? Federal courts have only limited subject matter jurisdiction and may not act on the merits of parties' arguments in the absence of subject matter jurisdiction.

tend that this consent can be expressed in separate filings by each defendant. (Def. Brief in Opp. to Remand, Dkt. Entry 27, at 8.)

■ Every defendant who has been served has filed a consent to removal. (*See* Dkt. Entries 3 (Eli Lilly), 5 (Merck), 7 (Abbott), 9 (Baxter International), 10 (Pfizer), 11(Aventis), 12 (Medisca), 15 (GlaxoSmithKline), 16 (Integra), and 17 (Gallipot).)[3] Two of these consents, that of Integra and Gallipot, were filed thirty-one days after the date of service upon Aventis, the first-served defendant. (Dkt. Entries 16–17.) Defendants contend that these consents were timely because they were filed within thirty days from the date of service on Integra and Gallipot. (Def. Brief in Opp. to Remand, Dkt. Entry 27, at 9 & n. 7.)

As this Court has previously noted, *see Pocono Springs Civic Ass'n v. Rich One Inc.*, No. 00–CV–2034, 2001 WL 114390, at *2 (M.D.Pa. Jan. 29, 2001), there is "a split of decisions regarding whether the thirty-day period runs from the date of service upon the first-served defendant or the date upon which each individual defendant is served." There are many decisions, however, that would allow each defendant thirty days from the date it was served to express its consent to removal. *See Marano Enters. v. Z–Teca Rests. L.P.*, 254 F.3d 753, 756–57 (8th Cir.2001)(later-served defendants may remove a case to federal court, even it earlier-served defendants failed to do so within thirty days); *McKinney v. Bd. of Trustees*, 955 F.2d 924, 928 (4th Cir.1992)(holding that each defendant has thirty days from its service to join in removal); *Brierly v. Alusuisse Flexible Packaging Inc.*, 184 F.3d 527, 533 (6th Cir.1999), *cert. denied*, 528 U.S. 1076, 120 S.Ct. 790, 145 L.Ed.2d 667 (2000)(agreeing with *McKinney* ); *Orlick v. J.D. Carton & Son, Inc.*, 144 F.Supp.2d 337, 343 (D.N.J. 2001)(same); *Lemon v. MTS, Inc.*, No. C.A. 01–2730, 2001 WL 872639, at *3 (E.D.Pa. July 2, 2001)(same); *but see Getty Oil v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 (5th Cir.1988)(adopting "first-served defendant" rule).

This "later-served defendant" rule appears to be a necessary corollary to the Supreme Court's recent decision in *Murphy Brothers, Inc. v. Michetti Pipe Stringing Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), in which the Court observed that "service of process is fundamental to any procedural imposition on a named defendant." The Court in that case held that the thirty day removal period did not begin to run when the defendant received a faxed, file-stamped copy of the complaint, but only upon formal service by certified mail. In light of this authority, it seems doubtful that the Third Circuit would adopt a "first served defendant" rule.

The plaintiffs have not asserted that any defendant failed to express consent to removal within thirty days from the date of service upon that defendant. Therefore, plaintiffs' procedural challenge to the removal must fail.

**B. Plaintiffs' Substantive Challenge to the Removal**

*1. Federal Question Jurisdiction*

An action filed in state court may be removed to federal court if the federal court would have had subject matter juris-

---

**3.** The defendants contend that Meridian Chemical, the only defendant not to file a consent, has not been served. (Def. Brief in Opp. to Remand, Dkt. Entry 27, at 9 n. 5.) The plaintiffs have not filed a reply brief or otherwise disputed this statement. Defendants who have not been served cannot be required to consent to the removal. *See Cartwright v. Thomas Jefferson Univ. Hosp.*, 99 F.Supp.2d 550, 552 n. 6 (E.D.Pa.2000).

diction had the action originally been brought in federal court. 28 U.S.C. § 1441(a). The federal district courts have original subject matter jurisdiction over claims "arising under the Constitutions, laws, or treaties of the United States." 28 U.S.C. § 1331. The plaintiffs contend that there is no basis for federal question jurisdiction over their Pennsylvania state law causes of action for strict products liability, negligence, and fraud. The defendants argue that these state law claims necessarily turn on the resolution of substantial federal questions embedded in the Vaccine Act.

■■■ The presence or absence of federal question jurisdiction is governed by the "well pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)(citing *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). This rule applies even if the complaint anticipates the defense and even if all parties concede that the federal defense is the only question truly at issue in the case. *See Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425.

■■■ A plaintiff may not, however, plead around a federal question if the plaintiff's claim "necessarily depends" on federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Yet, the "mere presence of a federal issue in a state cause of action does not automatically confer jurisdiction."

*Merrell Dow Pharms.,* 478 U.S. at 813, 106 S.Ct. 3229. Thus, federal courts may hear only those removed cases "in which a well-plead complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.,* 463 U.S. at 28, 103 S.Ct. 2841.

■■■ The defendants assert two arguments for the invocation of federal question jurisdiction in this case. First, they contend that the Vaccine Act creates an exclusive remedy, "displacing any state remedy until the Vaccine Court procedure has been exhausted." (Def. Brief in Opp. to Remand, Dkt. Entry 27, at 7.) As noted above, the Vaccine Act creates a federal no-fault remedial scheme for vaccine related injuries in which plaintiffs must first pursue their claims through the Vaccine Court prior to instituting a civil action. *See* 42 U.S.C. § 300aa–11. The defendants argue that any claims the plaintiffs bring under state law before exhausting their remedies through the Vaccine Court are necessarily federal claims. (*See* Def. Mot. in Opp. to Remand, Dkt. Entry 27, at 6–7.) Essentially, they are arguing that the Vaccine Act is not an affirmative defense to the plaintiffs' claims, but rather provides for an exclusive federal remedy that precludes separate state court causes of action before exhaustion.

■■■ It is true that some state claims are preempted by federal law, but federal preemption is typically considered a defense and actions are generally not subject to removal on this basis. The doctrine of "complete preemption" is an exception to this general rule. *See Dukes,* 57 F.3d at 354. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law claim is considered, from its inception, a federal claim, and therefore

arises under federal law." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. 2425. The doctrine applies only where Congress evinces a clear intent to displace all state law causes of action. *Id.* The Vaccine Act, in contrast, specifically contemplates that civil law remedies remain available for vaccine-related injuries. "It is axiomatic that a federal remedy that leaves intact alternative civil fora cannot be the basis for 'creation' of claims that may be brought in those fora." *Doherty v. Pasteur,* No. C 01–4771 MJJ, 2002 WL 1034044, at *2 (N.D.Cal. May 17, 2002). Congress had the opportunity to create an exclusive federal remedy for vaccine related injuries and declined to do so.[4] The Vaccine Act "necessarily contemplates that state courts will have to apply federal law and consider whether a vaccine-related claim is covered by the Act or not." *Demos v. Aventis Pasteur,* No. 01–04504–CIV, slip op. at 16 (S.D.Fla. Mar. 21, 2002). The Vaccine Act does not eliminate the state tort systems, but allows state tort systems to supplement the remedies provided for in the Act.

The Vaccine Act does not completely preempt state laws, but only partially preempts them. This is not sufficient to create removal jurisdiction. The complaint alleges claims for strict products liability, negligence and fraud—all purely state causes of action. Application of the Vaccine Act would only postpone the ability of the plaintiffs to bring the claims and alter the remedies available. It would not preempt these state law claims. Conversely, the plaintiffs could not submit a

petition for compensation under the Vaccine Act in a state court. That the Vaccine Act's remedial procedures are a prerequisite to filing state law claims does not lead to the conclusion that plaintiff's claims arise solely under the Vaccine Act.

■ The defendants also argue that federal question jurisdiction exists because the plaintiffs' claims raise a substantial question of federal law. *See Franchise Tax Bd.,* 463 U.S. at 27–28, 103 S.Ct. 2841. They state that:

> Plaintiffs ask this Court to toll the statute of limitations for the Vaccine Act, interpret the Vaccine Act as to millions of class members, order relief that would directly contradict the stated purposes of the Vaccine Act, and determine innumerable other issues that directly implicate the comprehensive research and monitoring scheme provided for in the Vaccine Act.

(Def. Mem. in Opp. to Remand, Dkt. Entry 27, at 7.) The mere presence of a federal issue, however, does not create federal jurisdiction. *See Merrell Dow,* 478 U.S. at 814 n. 11, 106 S.Ct. 3229.[5] Courts that have considered similar arguments in vaccine-related cases have deemed such federal issues as "insufficiently substantial" to confer federal question jurisdiction. *See, e.g., Bertrand v. Aventis Pasteur Labs., Inc.,* 226 F.Supp.2d 1206, 1211–12 (D.Ariz.2002); *King ex rel. King v. Aventis Pasteur, Inc.,* 210 F.Supp.2d 1201, 1208 (D.Or.2002); *Doherty,* 2002 WL 1034044, at *3; *Demos,* slip op. at 15–17; *Garcia v. Aventis Past-*

---

4. To date, the Supreme Court has found only three bases for complete preemption: ERISA, the LMRA and certain Indian land grant rights. *Doherty,* 2002 WL 1034044, at *3.

5. *Merrell Dow* presented a more compelling case than defendants'. There, the plaintiffs used standards set forth in the Food Drug and Cosmetics Act as elements of their claims. 478 U.S. at 805, 106 S.Ct. 3229. The Court

found that the interpretation of those standards did not present a substantial federal question. Similarly, the interpretation of what makes up a "vaccine-related injury" is not sufficient to create federal question jurisdiction, particularly where, as here, the complaint makes no reference to federal standards and the federal issue is relevant only to an affirmative defense.

*eur Inc.,* No. C02–0168C (W.D.Wash. Apr. 22, 2002); *Haggerty v. Wyeth Ayerst Pharms.,* 79 F.Supp.2d 182 (E.D.N.Y. 2000). This Court agrees. It is not the plaintiffs who "ask this Court" to interpret the Vaccine Act, but the defendants.[6] Thus, the plaintiffs' allegations do not raise a sufficiently substantial question of federal law to create subject matter jurisdiction under § 1331.

### 2. *Diversity Jurisdiction*

■ Federal courts also have original subject matter jurisdiction over actions in which the matter in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332. For removal to be valid there must be complete diversity of citizenship, i.e., the citizenship of all the defendants must be diverse from the citizenship of all the plaintiffs. *See generally Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Additionally, the removal statute provides that an action based on diversity jurisdiction "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Here, it is undisputed that defendants Aventis Pasteur and GlaxoSmithKline, together with up to twenty "John Doe" corporations, are citizens of Pennsylvania, as are the plaintiffs. (Exhibit A, Dkt. Entry 1, Complaint, ¶ 6–11, 13, 23.)

■ To avoid the impact of sections 1332 and 1441, the defendants contend that the plaintiffs have no colorable claim against the Pennsylvania defendants and, therefore, the fraudulent joinder doctrine bars consideration of these defendants for purposes of subject matter jurisdiction. (Def. Mot. in Opp. to Remand, Dkt. Entry 27, at 4.) A party fraudulently joined by a plaintiff will not defeat removal jurisdiction. Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Boyer,* 913 F.2d at 111. The defendants' burden to show fraudulent joinder is "heavy". *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir.1992). The court's inquiry into the validity of a claim against a non-diverse defendant is less probing than that undertaken in the context of a motion to dismiss. Fraudulent joinder exists only if the claims against the non-diverse defendant are so devoid of merit as to be "wholly insubstantial and frivolous." *Id.* at 852. "[T]he court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses.... [T]hat is a merits determination which must be made by the state court." *Boyer,* 913 F.2d at 113. Thus, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the non-diverse defendants, the federal court must find that joinder was proper and remand the case to state court. *Batoff,* 977 F.2d at 851.

The defendants contend that Aventis and GlaxoSmithKline are "sham" defendants because the Vaccine Act prohibits a civil action for damages arising from a vaccine-related injury unless a petition for compensation has first been filed in the

---

6. It is instructive to note that our Court of Appeals has treated failure to exhaust administrative remedies as an affirmative defense, rather than a procedural bar. *See, e.g., Ray v. Kertes,* 285 F.3d 287 (3d Cir.2002)(construing the exhaustion requirement of 42 U.S.C. § 1997e(a) as an affirmative defense and reversing district court's sua sponte dismissal of § 1983 action). It is the defendants' burden to plead and prove an affirmative defense, and such defenses can be waived.

Vaccine Court. Specifically, they insist that the plaintiffs' argument that Thimerosal was an "adulterant" or "contaminant" under the Vaccine Act is baseless because Thimerosal is used as an FDA approved preservative in vaccines to prevent bacterial contaminants from weakening or debasing the vaccines.

Significantly, the majority of federal courts that have considered a motion to remand in cases involving a failure to exhaust the Vaccine Court process have granted the motion, rejecting similar fraudulent joinder arguments. *See Oxendine v. Merck & Co.,* 236 F.Supp.2d 517, 525–26 (D.Md.2002); *Bertrand,* 226 F.Supp.2d at 1212–15; *Cheskiewicz v. Aventis Pasteur, Inc.,* No. 02–3583, 2002 WL 1880524, at *2–3 (E.D.Pa. Aug. 15, 2002); *King,* 210 F.Supp.2d at 1208–11; *Doherty,* 2002 WL 1034044, at *4–5; *Demos,* No. 01–04505–CIV, slip op. at 7–14; *Garcia,* No. C02–0168C, slip op. at 6–9. These courts have held that to determine whether Thimerosal is an adulterant or contaminant would go beyond the causes of action stated in the complaint and assess potential defenses. *Bertrand,* 226 F.Supp.2d at 1213. The Vaccine Act does not control the plaintiffs' claims. Indeed, if it did control, this Court would have jurisdiction under § 1331. Rather, it is for the state court to determine in the first instance whether the Vaccine Act mandates dismissal of this case.

Moreover, the defendants' theory of fraudulent joinder is suspect. They essentially argue that, because all the defendants can assert a defense through the Vaccine Act, the joinder of the non-diverse defendants is fraudulent. They cite one case in support of this proposition, *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313 (9th Cir.1998). *Ritchey* involved an individual who, while taking the drug Halcion, was convicted of several criminal offenses. The plaintiff claimed that defendant Up-john was responsible because it suppressed information about the side effects of Halcion. He also accused his doctor, Dement, and Stanford Health Services of conspiring with Upjohn to conceal the negative information they had about the drug. *Id.* at 1314–15. The defendants removed the case to federal court and the district court denied plaintiff's motion to remand and granted summary judgment for the defendants. Affirming the district court's finding of Dement and Stanford Health Services as "sham defendants," the Ninth Circuit observed:

> We recognize that it is, perhaps, slightly peculiar to speak of Dr. Dement and Stanford as sham defendants because the statute of limitations bars a claim against them, when that would seem to lead to an argument that Upjohn itself is a sham defendant because the statute of limitations has also run against it. Nevertheless, the fact is that Ritchey did not state a cause of action against anyone, and his failure to state that cause of action against Dr. Dement and Stanford demonstrates beyond peradventure that they were sham defendants for purposes of removal.

*Id.* at 1320.

*Ritchey* is not persuasive. Such a rule expands the fraudulent joinder doctrine too far, particularly in light of the Supreme Court's admonition that all doubts regarding removal are to be resolved in favor of remand, *Shamrock Oil,* 313 U.S. at 108–09, 61 S.Ct. 868, and our Court of Appeals' observation that the defendants' burden to show fraudulent joinder is "heavy". *Batoff,* 977 F.2d at 851. Such a rule would allow the defendants to present their arguments for dismissal through "the backdoor." The defendants "essentially request this court ignore [the removal] standard in favor of the standard used in a

motion to dismiss." *Bertrand,* 226 F.Supp.2d at 1213.

Judge Shapiro of the Eastern District of Pennsylvania in *Cheskiewicz* also declined to accept the defendants' fraudulent joinder argument. *Cheskiewicz,* 2002 WL 1880524, at *3. Relying on *Boyer,* 913 F.2d at 113, which declared that "where there are colorable . . . defenses asserted . . . by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those . . . defenses," Judge Shapiro concluded that GlaxoSmithKline and Aventis could not be regarded as having been "fraudulently joined" to defeat the plaintiffs' objections to diversity jurisdiction. In reaching this result, Judge Shapiro declined to follow the decisions from the Hon. Tom Lee of the Southern District of Mississippi,[7] explaining:

> [A]rguments about the scope of the Vaccine Act, and the import of events occurring after the filing of the removal petition, are irrelevant because the defendants' arguments about the effect of the Vaccine Act on plaintiffs' claims are not unique to GlaxoSmithKline and Aventis, the non-diverse defendants, but are instead general to all removing defendants. Each is a manufacturer of a vaccine or Thimerosal having allegedly impacted the plaintiffs, and each will have the same opportunity to assert the Vaccine Act as a defense to plaintiffs' claims. However meritorious those defense may be, they are not unique to the non-diverse parties. Their disposition "is a merits determination which must

be made by the state court." *Boyer,* 913 F.2d at 113.

*Cheskiewicz,* 2002 WL 1880524, at *3.

Like Judge Shapiro, I conclude that the rationale of *Boyer* is controlling here. Fraudulent joinder simply may not be premised on a defense common to both diverse and non-diverse defendants. Thus, the motion to remand will be granted.

## C. Costs and Attorney Fees

■■■■■ Pursuant to 28 U.S.C. § 1447(c), the plaintiffs seek attorney fees and costs incurred in contesting removal. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of removal." 28 U.S.C. § 1447(c). A district court has broad discretion in determining whether to require the payment of costs and fees under section 1447(c), and may do so even though the party removing the case did not act in bad faith. *See Mints v. Educ. Testing Serv.,* 99 F.3d 1253, 1260 (3d Cir.1996). There are no "definitive criteria against which costs and attorney's fee applications under section 1447(c) must be judged." *Id.*

Although the plaintiffs have requested fees and costs, they have not provided any argument as to why an award of fees and costs would be appropriate in this matter. Moreover, the defendants did not remove this case in bad faith, but presented colorable grounds for removal (at the time of removal, many of the cases cited above as

---

**7.** *See McDonald v. Abbott Labs.,* 02–77 (S.D.Miss. Aug. 1, 2002)(dismissing claims against all defendants under the Vaccine Act); *Collins v. Am. Home Prods. Corp.,* 01–979 (S.D.Miss. Aug. 1, 2002)(same); *Stewart v. Am. Home Prods. Corp.,* 02–427 (S.D.Miss. Aug. 1, 2002)(same). Significantly, Judge Lee did not reference a rule akin to that established by the Third Circuit in *Boyer.* Indeed, his decision to dismiss rather than remand did not address at all the fact that the failure to exhaust issue was common to both diverse and non-diverse parties.

granting remand had not yet been decided). Thus, an award of costs and fees is inappropriate.

## CONCLUSION

Defendants have asserted a federal defense, nothing more. This is not sufficient to establish federal question jurisdiction over plaintiffs' claims. Nor have the defendants shown that Aventis and GlaxoSmithKline were fraudulently joined. Therefore, the lack of complete diversity between the plaintiffs and defendants defeats any invocation of diversity jurisdiction. This Court lacks subject matter jurisdiction and plaintiffs' motion to remand will be granted.

In light of the absence of subject matter jurisdiction, defendants' motion to dismiss will be dismissed as moot. Defendants, of course, may present their affirmative defense in state court, just as they did, with success, in the case remanded by Judge Shapiro. *See Cheskiewicz v. Aventis Pasteur, Inc.,* No. 02–952 (Pa.C.P.(Phila.), Dec. 16, 2002)(dismissing case after remand from federal court). An appropriate Order follows.

## ORDER

**NOW, THIS 31st DAY OF MARCH, 2003,** for the reasons set forth in the preceding memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motions to Dismiss (Dkt. Entries 22 and 23) are **DISMISSED AS MOOT.**

2. Plaintiffs' Motion to Remand (Dkt. Entry 13) is **GRANTED.**

   a. The Clerk of Court is directed to remand this matter to the Court of Common Pleas of Lackawanna County.

   b. The Clerk of Court is further directed to mark this matter in this Court as **CLOSED**.